**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN BRISKIN,<br><br>   *Plaintiff*,<br><br> v.<br><br>SHENZHEN FEST TECHNOLOGY CO. LTD., a.k.a. HONG KONG NEWGEN INTERNATIONAL, LTD.,<br><br>   *Defendants*. | Civil Action No. 18-15404<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

  This matter comes before the Court on the unopposed motion of Plaintiff Stephen Briskin for default judgment against Defendant Shenzhen Fest Technology Co., Ltd. a.k.a. Hong Kong Newgen International Ltd.[1] ("Defendant") pursuant to Fed. R. Civ. P. 55(b).  D.E. 63.  The Court reviewed the submissions[2] in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons stated herein, Plaintiff's motion, D.E. 63, is **DENIED**.

---

[1] Plaintiff named Hong Kong Newgen International, Ltd. as an alias of Shenzhen Fest Technology Co., Ltd., but filed two separate proofs of service and often refers to them as plural "Defendants." D.E. 65-1; D.E. 65-2.  The Court uses the singular "Defendant."  *See* D.E. 65 at 1 ("Plaintiffs [*sic*] believe these entities to be different names for the same company[.]").

[2] The submissions consist of Plaintiff's motion for default judgment and accompanying exhibits, D.E. 63, and the supplemental submission which the Court ordered, D.E. 65.

I.    **FACTS AND PROCEDURAL HISTORY**[3]

On September 22, 2021, Plaintiff Stephen Brisken filed his Third Amended Complaint against Shenzhen Fest Technology Co. Ltd., a.k.a Hong Kong Newgen International Ltd., alleging strict liability; negligence; and violations of the New Jersey Product Liability Act, N.J.S.A. 2A:58C *et seq.* ("NJPLA"). TAC. In 2016, Plaintiff allegedly purchased lithium-ion batteries (the "Lithium Ion Batteries") which were "designed, manufactured and distributed by Defendants."[4] *Id.* ¶ 7. Plaintiff alleges that on March 7, 2016, "two [Lithium Ion Batteries] in his pocket" suddenly exploded. *Id.* ¶ 8. Plaintiff claims that "[t]he device and flames from the explosion burned through the pocket of [Plaintiff's] pants and hit his bare skin." *Id.* Plaintiff then "ran outside, removed his pant[s], and attempted to remove the melted battery from his skin." *Id.* Plaintiff alleges that he "is physically and emotionally scarred from the explosion," and "experiences pain and numbness on a daily basis." *Id.* ¶ 11. Plaintiff contends that the "explosion and Plaintiff's resulting injuries were caused by the defective Lithium Ion Batteries, as well as the Defendants' negligence." *Id.* ¶ 10.

In support of the motion, Plaintiff submitted the Declaration of Domenic B. Sanginiti, Plaintiff's counsel. D.E. 63 at 3-4. Sanginiti claims that "[t]he seller of the subject lithium-ion battery, iChaseClouds.com, revealed it was selling 'E-Fest' batteries which are manufactured and distributed by [Defendant]." *Id.* ¶ 4.

Plaintiff filed proofs of service as to Defendant on August 4, 2022. D.E. 56, D.E. 57. On March 10, 2023, Plaintiff requested that default be entered as to Defendant. D.E. 59. The Clerk

---

[3] The facts are derived from Plaintiff's Third Amended Complaint. D.E. 50 ("TAC").

[4] The Court notes that the TAC often references "Defendants" who have been dismissed from the case, including Sony Corporation of America, Sony Electronics, Inc., and Sony Energy Devices Corp. The TAC is murky at best as to what conduct is attributed to the sole remaining Defendant.

of the Court entered default on March 16, 2023.  The present motion followed.  D.E. 63.  On June 6, 2023, the Court ordered Plaintiff to "in writing demonstrate subject matter jurisdiction, personal jurisdiction, and proper service."  D.E. 64.  Plaintiff filed a supplemental submission on June 23, 2023.  D.E. 65.

## II. STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure permits a court to enter a default judgment against a properly served defendant who fails to respond.  *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).  "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir.2005)).  "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'"  *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering a default judgment, the Court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages."  *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015).  The Court must also consider the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."

3

*Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006) (citation omitted).

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

When a default judgment is sought against a party that has not filed responsive pleadings, the Court "'has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

The Court has subject matter jurisdiction. Diversity jurisdiction exists when "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Plaintiff is a citizen of New Jersey. TAC ¶ 1; D.E. 65 at 1. While the TAC appears to allege that all "Defendants," including the now dismissed Defendants, are "New Jersey companies licensed to conduct business or conducting business in New Jersey," TAC ¶ 3, Plaintiff's supplemental submission claims that "defendants are foreign citizens," D.E. 65 at 1. It appears from the proofs of service that Defendant is a Chinese entity with a principal place of business in China, and therefore Plaintiff and Defendant are

diverse.[5]  *See* D.E. 56; D.E. 57.  Moreover, the amount in controversy appears to be greater than $75,000.  D.E. 65 at 1.

### B. Personal Jurisdiction

A federal court must have both statutory and constitutional authority to assert personal jurisdiction over an out-of-state defendant. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).  This two-step inquiry first looks to the forum state's long-arm statute, then to the Due Process Clause of the Fourteenth Amendment to determine if the exercise of jurisdiction is permitted.  *Id.*; *see also* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]").  In New Jersey, the two steps are collapsed into a single inquiry because the New Jersey long-arm statute allows for the "exercise [of] jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. J. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 589 (N.J. 2010) (internal quotation marks and citation omitted), *rev'd on other grounds*, 564 U.S. 873 (2011).  To establish personal jurisdiction, the Due Process Clause of the Constitution requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

"Personal, or in personam, jurisdiction, [generally] divides into two groups: 'specific jurisdiction' and 'general jurisdiction.'" *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172

---

[5] To the extent that Hong Kong Newgen International, Ltd. and Shenzhen Fest Technology Co., Ltd. are distinct entities, both appear to be Chinese entities with principal places of business in China, so the analysis remains the same.

(D.N.J. 2016).[6]  "Specific jurisdiction 'depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation).'" *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 284 n.6 (2014)).  General jurisdiction "'permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit.'" *Id*. (quoting *Walden*, 571 U.S. at 284 n.6).  If a defendant is subject to a forum's general jurisdiction, the defendant can be sued there on any matter. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  If, however, a defendant is solely subject to specific jurisdiction, the defendant may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

The Court's Order stated that Plaintiff had "not set forth what contacts, if any, [Defendant] [has] or had with New Jersey for purposes of personal jurisdiction," and ordered Plaintiff to "in writing, demonstrate . . . personal jurisdiction." D.E. 64.  Plaintiff's supplemental submission focuses solely on specific jurisdiction, claiming that the Court "has specific personal jurisdiction over the Defendants under the stream of commerce theory." D.E. 65 at 1-2.  Plaintiff states that under the stream of commerce theory, "a manufacturer may be held amendable to suit in the state where products are sold, even if those products are sold indirectly through importers or distributors with independent sales and marketing teams." *Id.* (citing *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3d Cir. 1981)).  According to Plaintiff, placing a product into the stream of commerce "with expectations that they will be purchased by consumers in [the forum] state" is sufficient to establish personal jurisdiction. *Id.* (citing *LG Elecs., Inc. v. First Int'l Comput., Inc.*, 138 F. Supp. 2d 574 (D.N.J. 2001)).

---

[6] There are other means to establish personal jurisdiction, such as consent, waiver, or in-state service of an individual.  The other methods are not at issue.

The Supreme Court has considered the stream of commerce theory, but a majority has not definitively set forth the requirements for such an exercise of jurisdiction. In *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, (1987), Justice O'Connor, writing for a four-Justice plurality, stated that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." *Id.* at 112 (O'Connor, J., plurality opinion). The plurality opinion continued:

> Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* Justice Brennan, also writing for four Justices, would have held that the placement of a product into the stream of commerce coupled with the knowledge that it would eventually be sold in a particular forum, is sufficient to establish minimum contacts with the forum. *Id.* at 117 (Brennan, J., concurring in part). For Justice Brennan, "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Id.* Justice Stevens, writing for three Justices, would have considered "the volume, the value, and the hazardous character" of the product in determining whether the defendant's conduct "rises to the level of purposeful availment." *Id.* at 122 (Stevens, J., concurring in part).

The Supreme Court took up the issue again in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), but no majority view emerged. The plaintiff in *Nicastro* was injured by a machine in New Jersey and attempted to sue the British manufacturer of the machine in New Jersey state

court. *Id.* at 877. Justice Kennedy, writing for four Justices, noted that "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 883 (Kennedy, J., plurality opinion). Thus, for Justice Kennedy, just as for Justice O'Connor in *Asahi*, "the authority to subject a defendant to judgment depends on purposeful availment." *Id.* The plurality opinion stated that "[t]he defendant's transmission of goods permits the exercise of jurisdiction *only where the defendant can be said to have targeted the forum*; as a general rule, it is *not enough* that the defendant might have predicted that its goods will reach the forum State." *Id.* at 882 (emphases added). Justice Breyer's concurrence, joined by Justice Alito, disagreed with Justice Kennedy's reasoning, and cited all three opinions from *Asahi* in determining that personal jurisdiction was not present. *Id.* at 888-89 (Breyer, J., concurring in the judgment). Justice Ginsburg authored a dissent for three Justices, agreeing that purposeful availment was the correct analysis, but arguing that a foreign entity which targets the United States as a whole can be subject to personal jurisdiction in all states in which its products were sold. *Id.* at 905 (Ginsburg, J., dissenting). While no majority emerged in *Nicastro* as to the appropriate analysis, a majority of the Court (six Justices) agreed that personal jurisdiction did not exist. *Id.* at 887, 893; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296-97 (1980) (rejecting a personal jurisdiction finding premised on the "mere likelihood that a product will find its way into the forum State" which would mean that "[e]very seller of chattels would in effect appoint the chattel his agent for service of process").

      Plaintiff's supplemental submission claims that "Defendants purposely availed themselves of the privilege of doing business in New Jersey by selling and distributing into the United States via an e-commerce model and by selling their products to distributors who shipped to New Jersey, including the website where Plaintiff purchased the product." D.E. 65 at 2. Plaintiff also states

8

that "Defendants' products are still available for shipment to New Jersey via online order from multiple U.S.-based websites[.]" *Id.* Finally, Plaintiff states that "[t]he Defendants thus purposely availed themselves of the U.S. market, and the New Jersey market specifically by selling to the local distributor where Plaintiff purchased their defective batteries." *Id.* at 3. These generalizations, even taken as true, are insufficient to establish personal jurisdiction. Plaintiff only claims that Defendant placed products into the stream of commerce and, at best, that they might have predicted that their goods would reach New Jersey. Assuming that the purposeful availment analysis is the correct standard, Plaintiff has not established that Defendant purposefully directed any actions towards New Jersey. *Asahi*, 480 U.S. at 112 (O'Connor, J., plurality opinion); *Nicastro*, 564 U.S. at 882 (Kennedy, J., plurality opinion). And under Justice Brennan's approach, Plaintiff has not established that Defendant was aware that its products were being sold in New Jersey—that Defendant might have been able to predict that their batteries would reach New Jersey is not sufficient. *Asahi*, 48 U.S. at 117 (Brennan, J., concurring in part); *see also World-Wide Volkswagen*, 444 U.S. at 297 ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

Plaintiff further claims that "[a] map on the Defendants' website shows they advertise that they ship to the United States" and that the website "also shows that Defendants traveled to the United States many times to exhibit and promote their batteries at e-cigarette trade shows in New York City; Ontario, California; Chicago, Illinois; Las Vegas, Nevada; and Miami Beach, Florida." D.E. 65 at 2-3. Plaintiff also claims that Defendant "exhibited at the Consumer Electronics Show in Las Vegas" which "draws visitors from around the country and world." *Id.* None of these

9

claims are connected to New Jersey and are thus insufficient to establish personal jurisdiction in this Court. *Nicastro*, 564 U.S. at 886 (Kennedy, J., plurality opinion) ("[T]he question concerns the authority of a New Jersey state court to exercise jurisdiction, so it is petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant.").[7] While these facts could arguably support a finding of personal jurisdiction under Justice Ginsburg's dissenting approach in *Nicastro*, they fall short of the plurality and concurrence's analyses, which both considered contacts with the specific forum.

Because Plaintiff has failed to establish that the Court has personal jurisdiction over Defendant, the motion for default judgment is denied and the Court does not reach the remaining default judgment requirements at this time.

## IV.     CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 21st day of August 2023,

**ORDERED** that Plaintiff's motion for default judgment, D.E. 63, is **DENIED without prejudice**.

_____
John Michael Vazquez, U.S.D.J.

---

[7] The Court notes that "a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002) (citations omitted). This is not such a case.